BUCKNER v. SESSIONS et al.

Foreclosure of mortgage— *Where estate assigned, what averments, etc.*.—In a bill to foreclose a mortgage, where the estate has been assigned, the mere allegation that the defendant is the assignee of the mortgage, is not sufficient; the mortgagor should be made a party, and the assignment should be as fully and distinctly stated as any other averment in the bill.

Same— *Who necessary party.*—In a suit for foreclosure of mortgage upon real estate, the occupier of the premises must be made a party, and the omission to do so, without showing some adequate reason therefor, is not only a good ground of demurrer, but a valid objection at the hearing.

Same—*Party wishing to redeem, etc.*—A party holding an outstanding title to mortgaged premises cannot affect the complainant's right to a foreclosure and sale by being made a party defendant and offering to redeem. If he wishes to redeem, he should file a cross bill for that purpose.

Practice— *Where merits in bill, but want of proper averments.*—Where it clearly appears that there are merits and equity in a bill, the bill, for want of proper averments, should not be absolutely dismissed, but the court should direct the proper averments to be made, or dismiss the bill without prejudice to the complainant to file another bill.

APPEAL FROM CHICOT CIRCUIT COURT.

Hon. Henry B. Morse, *Circuit Judge.*

*Garland & Nash,* for Appellant.

We submit:

*First,* There are no answers or denials from Sessions as to the debt due B. & Co., and this default admits it as alleged, and a decree *pro confesso* on that, binds them and all their privies : *Cunningham v. Steele,* 1 *Litt,* 58; 2 *J. J. Marsh,* 136; 6 *Mon.,* 192; 8 *Porter, Ala.,* 270; 4 *Hen & Munf,* 476; *Story Eq. Pls., (by Redfield)* 789–94 *and notes.* The pretended liens of the appellees, Carlton & Hartsook, are subsequent to the Buckner claim, and they are in the wrong element in coming into this cause : *Whitaker ex., v. Griffin's admr. and heirs.*

*Second,* On the part of the appellant the exhibiting of the notes and the mortgage made his case, and the issue of payment made, by Carlton & Hartsook, put the burden upon them as they averred it : 6 *Paige,* 583 ; 3 *Dana,* 439.

The rules of evidence in equity are the same as they are in law: 17 *Mass.*, 303; 2 *Bibb.*, 5; *Gresley Eq. Ev.*, 1 *et seq.*

*Third,* If these appellees really had equities, and had any just suspicion that Buckner had not rendered a fair accounting, and was claiming unjustly what he was not entitled to, they should have so answered, and made their answers a cross bill, and asked to have these accounts properly stated, and B. come to a fair and full settlement of all matters as between the creditors of S. for themselves and all others, and not merely deny B.'s rights, and stand on their sales and purchases, and demur to B.'s showing. The court of equity in this inquiry would have taken the account, and marshalled these debts and paid them off in their regular order: 1 *Story Eq. Jurisp.*, 64–7, and cases cited in brief in the Richard Sessions ("*Luna*") case by us. The court would have seen that all necessary parties, with their claims and securities were before it: *Story Eq. Pls.*, 135, *et seq.* The court would shape and mold its process, and if needed, make a new writ to do justice between all parties: *Story Eq. Pls.*, 389–402. It would, having jurisdiction, see that justice was done at once, and without delay, without accumulation of costs, and without multiplicity of suits: *Authorities Sup.*; 12 *Peters*, 655–75.

*Bell & Carlton,* for Appellee.

We submit that, from the facts in the case, it is clear that Buckner, after the dissolution of the firm, had no right to make debts with the defendant, D. H. Sessions, and debit the firm of Buckner, Newman & Co. with them; for it is a principle of law that no one can be made a creditor of another, without their consent. *See Bertrand vs. Byrd,* 5 *Ark.*, 651.

Furthermore, there was no such firm in existence, according to the proof, as Buckner, Newman & Co., when the items of the account in Exhibits C and A, making the sum of four thousand two hundred and fifty-eight dollars and fifteen cents, that was transferred to Buckner & Co., were formed. Beyond all question, if those advances were made to D. H.

Sessions, they were made by Henry S. Buckner on his own responsibility, and the firm of Buckner, Newman & Co. had nothing to do with them. As to the decree, *"pro confesso,"* against D. H. Sessions, it is true that decree is conclusive, if this case was between Buckner and Sessions, but upon this submission, as against Carlton and Hartsook, the decree, *pro confesso,* is entitled to no weight. It is true, as to *final* decrees, *all parties to it are concluded* by the facts contained in it. That in decrees *"pro confesso"* the parties are not so concluded, but only in *final decrees. See Trammell vs. Thurmond,* 17. *Ark.,* and *Hannah vs. Carrington,* 18. *Ark.,* 85.

HARRISON, J.—This was a bill filed in the Chicot Circuit Court, to the October term, 1868, by Henry S. Buckner against William B. Street, by the description of *assignee* of Daniel H. Sessions, Placid Forestall, as administrator of Henry A. Rathbone, deceased, John S. Whitaker, Daniel J. Hartsook, and John R. Fowler, to foreclose a mortgage. The bill alleged, in substance, that Daniel H. Sessions was, on the 21st day of February, 1866, indebted to Buckner, Newman & Co., cotton factors and commission merchants in New Orleans, of which firm the complainant was a member, by two promissory notes of that date, for $17,448 50, and $5,482 05, respectively, each to become due in ten months after date, and bear eight per cent. interest after maturity, payable to his own order and assigned to them by his blank endorsement; to secure the payment of which, he executed to them a mortgage on two plantations in Chicot county, known as the Brinkly and Linwood plantations, of like date with the notes, which mortgage was, thereafter, duly recorded in said county, on the 16th of June following; that the firm of Buckner, Newman & Co. was, on the 31st day of August, 1866, dissolved, and upon a settlement between the members of the partnership matters, certain assets were set apart and transferred to the other members, in full satisfaction and discharge of their interests, and the remainder, including the notes and mort-.

gage in question, were transferred and assigned to the complainant, and he was then the sole owner of the notes and mortgage. That it was also agreed between them, that he should assume the payment of the debts and liabilities of the firm, and the liquidation and settlement of its business; that only a part of the money, called for by the notes, had been paid, and that there remained due on them, on the 20th day of June, 1868, the sum of $10,031 60, and nothing had since been paid. The bill then charged that the said Hartsook claimed title to the plantations by a pretended sheriff's deed, which deed, if he had one, it averred, was subsequent to the mortgage; that the said Whitaker, also, set up some sort of claim to them, the real nature of which was unknown to the complainant, but which, if in fact he had any valid title or claim, was, like the other, acquired subsequent to the execution of the mortgage; that said Forestall, as administrator of said Rathbone, claimed a vendor's lien upon the Brinkley plantation, for what amount, or when or how created, was not stated; and that said Fowler was in the occupancy and possession of the Linwood plantation. Whitaker disclaimed any title or interest; Street, Forestall, and Fowler made no defense; Hartsook answered the bill. He claimed to be the owner of the plantations, by a purchase at a sheriff's sale, under an execution upon a judgment against Sessions, and a deed for the same from the sheriff; but whether the purchase or judgment was before or after the execution of the mortgage, was not stated. The notes and mortgage, he insisted, were given to Buckner, Newman & Co. merely as security for advances they had agreed to furnish Sessions in the year 1866, and that he had paid them for all that he obtained, and nothing was due upon the notes. Charles H. Carlton, claiming an interest in the suit, was, on his application, made a defendant, and answered the bill, and claimed also to be a purchaser at a sheriff's sale, made, as he alleged, under an execution upon a judgment recovered against Sessions, in the Circuit Court of Chicot county, on the 5th day of December, 1867,

and to have a deed for the property from the sheriff. He admitted the making of the notes and mortgage by Sessions, but asserted they had, been paid, and offered, if anything was due, to pay the same and redeem the mortgage. Replications were filed to the answers, and the cause was heard at the April term, 1870. The court dismissed the bill for want of equity, and the complainant appealed.

We will state the substance of the evidence. Henry S. Buckner, complainant, deposed: That Sessions, being indebted to the house of Buckner, Newman & Co., at the date of the notes and mortgage, by an account of long standing, in the sum of $17,445 50, closed the same by the notes, mentioned in the bill, for that amount; the smaller note, or the one for $5,482 05, was given to be discounted to obtain advances and supplies for the year 1866, and the mortgage was given to secure their payment. The proceeds of the note was $5,125, which was placed to his credit and Sessions was paid the same in advances and supplies, as he applied for them. The firm of Buckner, Newman & Co. was dissolved in August, 1866, and at the time of the dissolution, Sessions had overdrawn the money to his credit, several hundred dollars. The deponent was charged with the liquidation and settlement of the business and Sessions continuing to draw on the house, he paid his drafts and charged them to the same account. In September of the same year, the deponent, with certain other persons, established the house of Buckner & Co., with which Sessions also had dealings that year, and at the end of the year, he owed that house $5,229 17, and Buckner, Newman & Co., or the deponent, $4,258 15. The latter account was then transferred to his account with Buckner & Co., but because of some dissatisfaction on the part of one of the parties, it was afterwards transferred back, and the account with that house was also transferred to the books of Buckner, Newman & Co., and Sessions' account with Buckner & Co. was cleared. In the early part of 1867, Buckner & Co., by directions from Sessions, paid

deponent the proceeds of certain assignments of cotton, amounting to $23,982 56, which satisfied his account, and the balance stood as a payment upon the notes. The witness exhibited, as a part of his deposition, a detailed statement of Sessions' account, embracing the transactions with Buckner, Newman & Co., those with himself, after their dissolution, and also those with Buckner & Co., showing the facts stated, and that, allowing interest on both, the debits and credits, there was due on the notes, on the 20th day of June, 1868, the sum of $10,031 60, no part of which, he said, had since been paid. Daniel H. Sessions deposed, that when he gave the mortgage, he and Buckner, Newman & Co., had an account of $17,445 50, of several years standing, and that they agreed, at the time, to make him advances, for that year, to an amount which would make his entire indebtedness about twenty-two thousand dollars. That he gave them his notes, but did not, according to his recollection, which, however, was not perfect, give any for the advances, and did not think he only gave one note for the account, and that he owed, on the notes, on the 20th day of June, 1868, as alleged in the bill, $10,031 00, no part of which had since been paid.

From the evidence in the case, which most conclusively establishes Session's indebtedness, we should have no hesitancy, were the bill properly framed, and all necessary parties before the court, in deciding that the complainant was entitled to the relief he prayed.

It is the general doctrine, of the Courts of Equity, that all persons, whose interest are to be affected or concluded by the decree, ought to be made parties to the suit. But Sessions, the mortgagor, was not made a party in the bill, nor was it shown, by any allegation or averment, that he had ever parted with his interest in the plantations. A transfer or assignment of the estate was not implied in the character in which Street was sued, and we are not able to understand from the loose and indefinite phrase, *as assignee of Daniel H. Sessions,* used in the bill, as descriptive of that, the interest he may

have had in it, and whether he was assignee in bankruptcy, or for the benefit of creditors, or was an absolute purchaser. The assignment, if there was any, should have been stated as fully and distinctly as any other allegation in the bill.

It is expressly required by *Sec.* 4, *Chap.* 17, *Gould's Digest*, that in a suit for a foreclosure of mortgage, upon real estate, the occupier of the premises must be made a party; and the omission to do so, without showing some adequate reason therefor, is held, not only a good ground of demurrer, but a valid objection at the hearing. *McLain & Badgett vs. Smith*, 4 *Ark.*, 244; *Fletcher vs. Hutchinson*, 25 *Ark.*, 30.

The occupant, Fowler, of one of the plantations only, was made a defendant, and it was not shown that there was no one in the occupancy of the other; this, therefore, was another defect in the bill.  ·

The offer made by Carlton, in his answer, to redeem the plantations from the mortgage, if his title as purchaser, at sheriff's sale, had been proven, could not affect the complainant's right to a decree for a foreclosure and sale, if his case had been properly presented to the court. If he wished to redeem, he should have filed a cross bill for that purpose.

Though, for the reasons we have stated, no decree could, at the hearing, be rendered for the complainant, yet, as it clearly appeared that there were merits and equity in the bill, it should not have been absolutely dismissed, but the court should have directed, according to *Section* 155 of the Code, the proper amendments to be made, or have dismissed it without prejudice to the complainant's right to file another bill. The decree of the court below is therefore reversed, and the cause remanded to it with instructions to allow the complainant, if he wishes, to amend his bill, and to bring other parties, if necessary, before the court, and if in the further progress of the cause, nothing to the contrary is shown by the parties, who may hereafter be brought in, to render a decree in his favor for the balance alleged in the bill to have been due on the notes, upon the 20th day of June, 1868, with

eight per cent. interest from that date, and for a foreclosure and sale as prayed in the bill; but if the complainant should not see proper to amend his bill, to dismiss the same without prejudice to his right to bring another suit against proper parties.